UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

$\triangleright$/$F$

-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM**

-against-

**12-CR-568 (NGG) (VVP)**

ZEPHANIAH DANTZLER,

Defendant.

-----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

In response to the Second Circuit's November 14, 2014, decision remanding this case for

resentencing, Defendant Zephaniah Dantzler argues that he is not subject to the enhanced penalty

provision of the Armed Career Criminal Act ("ACCA") because the Government cannot sustain

its burden of proving that he committed three prior violent felony offenses "on occasions

different from one another," as required by the statute, 18 U.S.C. § 924(e). The Government

vigorously contests this assessment. This Memorandum evaluates the parties' arguments in light

of the Second Circuit's decision, United States v. Dantzler, 771 F.3d 137 (2d Cir. 2014), and

explains the court's conclusion that Defendant is not subject to the sentence enhancement under

the ACCA.

## I.   BACKGROUND

On March 27, 2013, Defendant pleaded guilty to one count of felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g)(1). Under the ACCA, a defendant who violates

§ 922(g) and who has three previous convictions for violent felonies "committed on occasions

different from one another" is subject to a minimum sentence of imprisonment of fifteen years,

or 180 months. Id. § 924(e)(1). At Defendant's original sentencing hearing on July 25, 2013,

the court determined that Defendant had previously committed three violent felonies on

"occasions different from one another," and that as a result, the enhanced sentence under the

1

ACCA applied. Accordingly, after weighing the § 3553(a) factors, the court sentenced Defendant to 180 months' imprisonment. (Statement of Reasons (Dkt. 52) at 3.)

In concluding that the ACCA's fifteen-year mandatory minimum sentence applied, the court relied upon the Probation Department's presentence report ("PSR"), as well as New York City Police Department ("NYPD") complaint reports related to Defendant's three prior violent felonies.[1] The PSR characterized the following three offenses as violent felonies "committed on occasions different from one another": (1) a conviction in New York State Supreme Court, Kings County, for a robbery committed on February 18, 2006, in Brooklyn, at 11:00 a.m., in which Dantzler and a co-defendant stole a debit card from the victim using a box cutter; (2) a conviction in New York State Supreme Court, New York County, for a robbery committed on February 19, 2006, on the subway in Manhattan, together with two co-defendants, using a box cutter and a bladed knife; and (3) a conviction in New York State Supreme Court, Queens County, for a robbery also committed on February 19, 2006, on the subway in Queens, with two other individuals, using a box cutter and a bladed knife. Dantzler, 771 F.3d at 139-40.

In a sentencing memorandum, Defendant disputed the characterization of these crimes in the PSR, arguing that the two February 19, 2006, robberies represented "the same criminal episode." (Def.'s July 16, 2013, Ltr. (Dkt. 48) at 1.) In support of this argument, Defendant provided the court with the NYPD complaint reports, which had not been included in the PSR, and which provided the following additional details regarding those two robberies. Defendant had been arrested at 3:30 a.m. on February 19, 2006, in the Manhattan City Hall subway station for a robbery that had taken place on a number 6 subway train 10 minutes earlier. On March 2, 2006, while he was in pretrial detention at Rikers Island in connection with that

---

[1] The PSR, in turn, explicitly drew upon "[c]ourt records, parole records, local presentence report[s], and arrest report[s]." United States v. Dantzler, 771 F.3d 137, 146-47 (2d Cir. 2014) (alterations in original) (citation and internal quotation marks omitted).

offense, Defendant was arrested for another robbery that took place at 1:45 a.m. on February 19, 2006, on an eastbound number 7 train in Queens. Dantzler, 771 F.3d at 140.

In determining that the two February 19, 2006, robberies were "committed on occasions different from one another" for the purpose of the ACCA, this court relied on the Second Circuit's decision in United States v. Rideout, 3 F.3d 32 (2d Cir. 1993), which held that "offenses committed against different victims separated by at least twenty to thirty minutes and twelve to thirteen miles qualify as offenses 'committed on occasions different from one another.'" Id. at 35 (quoting 18 U.S.C. § 924(e)). Because the NYPD complaint reports demonstrated that Defendant "decided to travel on different subway lines at different times the same night," the court found Rideout compelled the conclusion that the two robberies were "committed on occasions different from one another." Dantzler, 771 F.3d at 148.

On appeal, however, the Second Circuit held that in determining whether predicate violent felonies were "committed on occasions different from one another" within the meaning of the ACCA, district courts are limited to considering only those sources approved by the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990), and Shepard v. United States, 544 U.S. 13 (2005): (1) the fact of conviction; (2) the statutory definition of the prior offense; (3) the charging document; (4) a written plea agreement; (5) a transcript of the plea colloquy; and (6) any explicit factual finding by the trial judge to which the defendant assented. Dantzler, 771 F.3d at 142-43 (emphasizing the need to avoid "subsequent evidentiary enquiries into the factual basis for the earlier conviction" (quoting Shepard, 544 U.S. at 20)). Accordingly, in finding that Defendant's two February 19, 2006, robbery convictions were "committed on

3

occasions different from one another," this court committed plain error by relying on source materials not approved by <u>Taylor</u> and <u>Shepard</u>.[2] <u>Id.</u> at 146.

In so holding, the court acknowledged:

> [F]or what is likely a relatively small number of cases, such as the one before us, in which the dates of the predicate offenses are not dispositive in determining whether they were committed "on occasions different from one another," the sentencing court's ability to impose the ACCA mandatory minimum will depend upon whether the <u>Taylor</u>- and <u>Shepard</u>-approved materials also contain other facts necessary for such a determination. Here, where two of the predicate offenses occurred on the same date, the District Judge was compelled to look to facts such as the identities of the victims and the times and locations of the offenses—which under our clear precedent in <u>Rideout</u> are precisely the factors rightly considered—in determining whether the crimes occurred on "occasions different from one another."

<u>Id.</u> at 145. On the record before it, however, the Second Circuit was not in a position to evaluate (a) which particular documents this court was entitled to consider in making its determination, and (b) whether the Government ultimately could meet its burden of proof in establishing that the February 19, 2006, robberies were "committed on occasions different from one another" using only materials approved by <u>Taylor</u> and <u>Shepard</u>. <u>Id.</u> at 147. Consequently, the court remanded the case for resentencing. <u>Id.</u> at 149-50 (noting that "if the Government renews its request to the District Court that it apply the mandatory minimum sentence prescribed by the ACCA, it must submit materials consistent with <u>Taylor</u> and <u>Shepard</u> to demonstrate that Dantzler's two robbery convictions were committed on separate occasions").

## II. DISCUSSION

On remand, the Government has provided the court with certain documents that—as Defendant concedes—constitute <u>Taylor</u>- and <u>Shepard</u>-approved source materials regarding the

---

[2] The Second Circuit reached this conclusion notwithstanding that Defendant himself submitted the NYPD complaint reports to this court, and relied upon those reports—as well as the PSR—in making his argument at sentencing. <u>Id.</u> at 147 n.5, 149.

4

two February 19, 2006, robberies. (See Def.'s May 13, 2015, Ltr. ("Def.'s Resp.") (Dkt. 60) at 2.) However, in light of the Second Circuit's decision, and for the reasons set forth below, the court finds these materials fail to establish, by a preponderance of the evidence, that these two robberies were "committed on occasions different from one another" under § 924(e).

### A. Source Materials

With respect to Defendant's conviction in New York County, the Government has produced: (i) a certificate of disposition certifying that on July 24, 2006, Defendant pleaded guilty to robbery in the second degree, in violation of New York Penal Law § 160.10(1) (applicable when the perpetrator forcibly steals property, and "is aided by another person actual present") in a case filed on February 24, 2006 (Certificate of Disposition Indictment, People v. Dantzler, No. 927-2006 (N.Y. Crim. Ct. Aug. 22, 2012) (Gov't's Feb. 6, 2015, Ltr. ("Gov't's Sent. Mem.") (Dkt. 57) at 22));[3] and (ii) an indictment charging that, among other crimes, on or about February 19, 2006, in New York County, defendants Sean Boddie, Zephania[h] Dantzler, and Michael Oliver a/k/a Shawn Watson, each "aided by another person actually present," forcibly stole property from a person "known to the Grand Jury," thereby committing robbery in the second degree (Indictment (Sixth Count), People v. Boddie et al., Nos. 2006NY012221, 2006NY012222, 2006NY012223, 2006NY012274 (N.Y. Crim Ct.) (Gov't's Sent. Mem. at 26)).

Regarding Defendant's conviction in Queens County, the Government has produced: (i) a certificate of disposition certifying that on December 7, 2006, Defendant pleaded guilty to robbery in the first degree, in violation of New York Penal Law § 160.15(3), in a case filed on June 22, 2006 (Certificate of Disposition Indictment, People v. Dantzler, No. 1510-2006 (N.Y. Crim. Ct. Aug. 16, 2012) (Gov't's Sent. Mem. at 15)); (ii) an indictment charging that, among

---

[3] Citations to pages of the Government's exhibits correspond to the page numbering assigned by the court's electronic docketing system (ECF).

other crimes, on or about February 19, 2006, defendants Shawn Watson a/k/a Michael Oliver, Sean Boddie, and Zephaniah Dantzler, "each aiding the others and acting in concert with other persons," forcibly stole a sum of United States currency and personal property from Wen Chung Lee, while using or threatening the use of "dangerous instruments," thereby committing robbery in the first degree (Indictment (First Count), People v. Watson et al., No. 1510/2006 (N.Y. Crim. Ct.) (Gov't's Sent. Mem. at 18)); and (iii) a transcript of Defendant's plea allocution in New York Supreme Court, Queens County, reflecting the following colloquy:

> THE COURT: Do you admit that on February 19, 2006 here in Queens County that you, Shawn Watson and Shawn [sic] Boddie forcibly stole certain property, a sum of money and personal property from Wen Chung Lee and in the course of the commission of that crime, you threatened the immediate use of a dangerous instrument?
>
> THE DEFENDANT: Well, actually, I was just looking out, but as a complainant—I'm guilty to the three working off the line.
>
> THE COURT: You knew what they were doing; is that right?
>
> THE DEFENDANT: Yes.

(Hr'g Tr. at 4:13-21, Dantzler, No. 1510-06 (N.Y. Crim. Ct. Dec. 7, 2006) (Gov't's June 10, 2015, Ltr. (Dkt. 65) at 9).) The transcript also reflects that although Defendant was sentenced to five years' imprisonment in connection with this plea, this sentence was to run concurrently to the sentence he was serving at the time. (Id. at 5:5-15.)

In sum, the Government's Taylor- and Shepard-approved source materials establish that Defendant's New York conviction was based on an offense committed on February 19, 2006, in New York County, and perpetrated by Defendant along with Sean Boddie and Michael Oliver a/k/a Shawn Watson; these materials also establish that Defendant's Queens conviction was based on an offense committed on February 19, 2006, in Queens County, and perpetrated by Defendant along with Sean Boddie and Shawn Watson a/k/a Michael Oliver, who together stole

6

cash and other personal effects from Wen Chung Lee by threatening the immediate use of a dangerous weapon. In other words, the Government's materials establish the date, county, and perpetrators involved in Defendant's New York County conviction; and the date, county, perpetrators, victim, stolen property, and modus operandi involved in Defendant's Queens County conviction.

### B.    Application

While conceding these materials' compliance with <u>Taylor</u> and <u>Shepard</u>, Defendant nonetheless argues that the documents provided by the Government fail to establish that the two February 19, 2006, robberies took place "on occasions different from one another." (Def.'s Resp. at 4.)

Under <u>Rideout</u>, the question whether two criminal offenses are "committed on occasions different from one another" under the ACCA turns on whether the defendant "could have chosen to end his criminal activity" between the two. 3 F.3d at 35; <u>see also</u> <u>United States v. Elliott</u>, 703 F.3d 378, 383 (7th Cir. 2012) (noting "a court's inquiry as to the timing of the prior offenses 'is simple: were the crimes <u>simultaneous</u> or were they <u>sequential</u>?'" (quoting <u>United States v. Hudspeth</u>, 42 F.3d 1015, 1021 (7th Cir. 1994) (en banc), <u>abrogated on other grounds</u>, <u>Shepard</u>, 544 U.S. 13 (2005))).[4] In determining whether a defendant could have chosen to end

---

[4] Defendant questions the persuasive force of certain cases cited by the Government for this proposition, arguing that "the specific facts underlying those holdings . . . may not be valid because those facts were determined by information outside approved <u>Taylor/Shepard</u> documents." (Def.'s June 7, 2015, Ltr. ("Def.'s Sur-Reply") (Dkt. 62) at 2.) As the Government points out, however, it is irrelevant whether these courts based their factual findings on sources later deemed inappropriate after <u>Taylor</u> and <u>Shepard</u>. (<u>See</u> Gov't's Reply at 6.) The legal proposition, for example, that two crimes—even when they are separated only by three blocks and a few minutes—can be "committed on occasions different from one another" for § 924(e) purposes, <u>see, e.g.</u>, <u>United States v. Schieman</u>, 894 F.2d 909, 913 (7th Cir. 1990), remains intact, regardless of <u>how</u> those particular facts were established in that case. <u>See</u> <u>Kirkland v. United States</u>, 687 F.3d 878, 890 n.11 (7th Cir. 2012) (pointing out that a prior ACCA decision remained good law, notwithstanding that decision's consideration of sources later deemed inappropriate under <u>Shepard</u>). Of course, <u>Dantzler</u> makes clear that after <u>Taylor</u> and <u>Shepard</u>, the Government's proof that—to continue the example—two crimes were separated by three blocks and a few minutes must be established by a preponderance of the evidence through approved sources alone. In other words, the question whether certain substantive facts are sufficient to establish that two crimes were "committed on occasions different

his criminal activity, the Second Circuit instructs district courts to consider "whether the victims of the two crimes were different, whether the crimes were committed at different locations, and whether the crimes were separated by the passage of time." United States v. Daye, 571 F.3d 225, 237 (2d Cir. 2009) (citing Rideout, 3 F.3d at 34-35; United States v. Towne, 870 F.2d 880, 891 (2d Cir. 1989)). The Government bears the burden of proof by a preponderance of the evidence.[5]

The approved materials in this case make clear that both crimes took place on the same day, and involved the same three perpetrators. They do not make clear, however, whether both crimes involved the same victim, whether these crimes were committed at different physical locations, and whether these crimes were separated by the passage of time. The parties disagree as to whether this forecloses a conclusion that these crimes were "committed on occasions different from one another" for ACCA purposes.

> 1. Prosecution in Separate Counties

The Government argues that given the nature of the crime of robbery, which involves the forcible taking of property, the fact that Defendant was prosecuted in separate—albeit adjoining—counties is conclusive evidence that the robberies were committed in different

---

from one another" under § 924(e) is a separate inquiry from the question governed by Taylor, Shepard, and Dantzler: whether the Government has relied on appropriate source materials to establish those facts, whatever those facts prove.

[5] The Second Circuit has not explicitly held that the Government bears the burden of proving by a preponderance of the evidence that offenses were "committed on occasions different from one another." See Dantzler, 771 F.3d at 145 (noting the Government has the burden "of establishing predicate crimes for the purpose of sentencing under the ACCA"); id. at 149 (holding "absence of an objection will not relieve the Government of its burden of proving through Taylor- and Shepard-approved sources that the ACCA enhancement applies"). The Second Circuit has, however, previously decided this standard applies to determining whether ACCA predicate offense constitute "violent felonies" within the meaning of the statute. United States v. Brown, 52 F.3d 415, 425 (2d Cir. 1995). In addition, the courts of appeals that have explicitly addressed the question have determined that the Government bears the burden of proving the offenses were committed on different occasions by a preponderance of the evidence. See, e.g., Kirkland, 687 F.3d at 894-95; United States v. Foster, 662 F.3d 291, 299-300 (4th Cir. 2011); United States v. Crump, 229 F. App'x 186, 189 (3d Cir. 2007) (non-precedential opinion); United States v. Spears, 443 F.3d 1358, 1361 (11th Cir. 2006); United States v. Phillips, 149 F.3d 1026, 2033 (9th Cir. 1998).

locations, and therefore, at separate times.[6] (See Gov't's Sent. Mem. at 4; Gov't's

May 27, 2015, Ltr. ("Gov't's Reply") (Dkt. 61) at 3-4.) Because Defendant pleaded guilty to

committing one robbery "in New York County" and the other robbery "in Queens County," the

Government contends, the court can assume that the two February 19, 2006, robberies were

separated by both time and distance, and thus "committed on occasions different from one

another." (See Gov't's June 10, 2015, Ltr. at 1-2.) Because New York County and Queens

County are not physically contiguous, this proposition is intuitively appealing. If Defendant

necessarily passed over a bridge or through a tunnel between committing the two robberies, that

would strongly suggest the crimes were committed on separate occasions for § 924(e) purposes.

See Rideout, 3 F.3d at 35 (noting the defendant "traveled a significant distance between the two

offenses during which time he could have chosen to end his criminal activity"). In light of the

Second Circuit's application of Taylor and Shepard, however, the Government's approved

materials are insufficient to meet its burden in this case.

Most significantly, the fact that Defendant was separately prosecuted in New York

County and Queens County does not necessarily mean that the two crimes were committed in

different physical locations. Ordinarily, a crime must be charged in the county where the offense

took place. See N.Y. Crim. Proc. Law § 20.40(1)(a). Under New York's Criminal Procedure

Law, however, "[a]n offense committed upon any bridge or in any tunnel having terminals in

different counties may be prosecuted in any terminal county," and offenses committed in New

York Bay may be prosecuted in any one of the five boroughs as well. See id. § 20.40(d), (e). In

---

[6] The Government also argues that this fact gives rise to a "strong inference" that the victims of the crimes were different. (Gov't's Sent. Mem. at 4.) The presence of separate victims, however, is not essential to a finding of separate occasions. As the Government points out, one court of appeals—to which the Second Circuit has cited approvingly—has held that distinct victims are not necessary for a finding that two offenses were "committed on occasions different from one another." See Rideout, 3 F.3d at 34-35 (citing United States v. Washington, 898 F.2d 439, 440-42 (5th Cir. 1990) (concluding both offenses were committed on different occasions where the defendant robbed the same clerk at an all-night convenience store twice within a few hours)).

9

the absence of facts to the contrary, the court cannot exclude the possibility that Defendant committed both robberies on a bridge, in a tunnel, or somewhere in New York Bay or the East River, such that for jurisdictional purposes, the crimes were committed in both New York County and Queens County. Of course, considering only Taylor- and Shepard-approved materials, Defendant's crimes might have been committed as physically far apart as Inwood, Manhattan and Far Rockaway, Queens, which are separated by the East River and roughly 20 miles. But the unique geography of New York City[7] means that Defendant could have lawfully sworn that he committed one robbery in New York County and the other robbery in Queens County, even though the actual crimes were committed in only one physical location, if that location supported geographic jurisdiction in both counties.[8] Cf., e.g., People v. Ruzas, 389

---

[7] Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of the fact that there are ten fixed crossings connecting New York County and Queens County. See, e.g., United States v. Proch, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011) (taking judicial notice of map of addresses listed in indictment (citing Gov't of the Canal Zone v. Burjan, 596 F.2d 690, 693-94 (5th Cir. 1979))). They consist of three passenger-vehicle bridges: the Ed Koch Queensboro ("59th Street") Bridge, the Robert F. Kennedy-Triborough Bridge, and the Roosevelt Island Bridge; one passenger-vehicle tunnel: the Queens Midtown Tunnel; four subway tunnels: the Steinway Tunnel (number 7 train), the 53rd Street Tunnel (E and M trains), the 60th Street Tunnel (N, Q, and R trains), and the 63rd Street Tunnel (F train); one set of passenger rail tunnels: the East River Tunnels (used by National Railroad Passenger Corporation ("Amtrak") and Metropolitan Transit Authority Long Island Railroad); and one freight rail bridge: the Hell Gate Bridge (maintained by Amtrak).

[8] Defendant also suggests another possibility: that the two robberies were in fact committed in only one county, such that Defendant's prosecution in the other county lacked geographic jurisdiction. (See Def.'s Sur-Reply at 1-2.) The court rejects this suggestion. While it is true that a defendant who pleads guilty can waive any defect in venue, see People v. Prescott, 486 N.E.2d 813, 815 (N.Y. 1985), the court is no more required to entertain the possibility that his prosecution in one county might be improper than it is to consider the potential that Defendant's underlying conduct did not actually constitute robbery in the first or second degree. See, e.g., United States v. Thomas, 572 F.3d 945, 951 n.3 (D.C. Cir. 2009) ("The Supreme Court . . . has sanctioned reliance on 'charging' documents such as an indictment with the apparent presumption that they accurately reflect the facts of a conviction or plea." (citing Shepard, 544 U.S. at 16)). Thus, as the Government argues, the court must assume that Defendant's convictions were valid under applicable law, including that Defendant's actions "in fact satisfied each of the elements of the crime of which he was convicted." (Gov't's June 10, 2015, Ltr. at 3 (citing Foster, 662 F.3d at 295 (explaining that "[c]ourts are, of course, permitted to draw reasonable inferences from the underlying state charging documents")).) Otherwise, the court would be required to engage in precisely the sort of inquiry prohibited by Taylor and Shepard. See Dantzler, 771 F.3d at 143 ("The Court in Taylor explicitly determined that, in enacting the ACCA, Congress had not meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses." (citations and internal quotation marks omitted)).

Moreover, this would require the court to countenance the possibility that Defendant, who was advised by counsel in both prosecutions, decided—more than four months after pleading guilty in New York—to plead guilty in Queens County to an offense for which he could not have been lawfully convicted. (See Gov't's June 10, 2015, Ltr. at 3 n.3.) The court is not, however, "required either to wear blinders or to leave common sense out of the equation" in

10

N.Y.S.2d 205, 206 (1976) (defendant who was charged with felony murder—where felony took place in one county and murder took place in another—could have been tried in either county).

The court cannot dismiss this possibility because the Taylor- and Shepard-approved materials submitted by the Government lack any facts regarding the physical location (or even relative timing) of the two robberies. As a result, this case is quite unlike Rideout, where the state court record established the exact addresses of the two residences the defendant burglarized, thus enabling the district court to establish the precise distance (and estimated travel time) between the two. See 3 F.3d at 35. The Government's Taylor/Shepard materials in this case also fail to clarify whether the victim, property stolen, and modus operandi were the same for each offense. What these records do establish, however, is that the perpetrators of the two crimes were the same three individuals.[9] Thus, notwithstanding Defendant's separate guilty pleas in separate counties, the court lacks a factual basis for concluding that the two February 19, 2006, robberies were separated by any distance or time such that they amounted to "occasions different from one another" under § 924(e). See Dantzler, 771 F.3d at 144 ("Absent reliance on Taylor- or Shepard-approved sources, such as a charging paper, jury instruction, or plea colloquy, a sentencing judge would necessarily have to reconstruct the conduct underlying a conviction,

---

determining whether offenses were committed on occasions different from one another under the ACCA. United States v. Miller, 478 F.3d 48, 52 (1st Cir. 2007).

[9] In addition, Defendant's plea colloquy in Queens County Criminal Court suggests that Defendant committed the Queens robbery by acting as a lookout for at least one of the other perpetrators. (Hr'g Tr. at 4:18-19, Dantzler, No. 1510-06 (N.Y. Crim. Ct. Dec. 7, 2006) ("Well, actually, I was just looking out . . . .").) That Defendant may have been acting as a lookout for two others increases the likelihood that Defendant could have committed more than one robbery simultaneously from the same physical location. For example, if Defendant was functioning as a lookout, he could have remained standing in one area—of a boat, a bridge, a tunnel, or a train—while another co-defendant robbed two victims sequentially, or while both of the other two co-defendants robbed separate victims simultaneously. In either scenario, Defendant could have been guilty of aiding and abetting two robberies simultaneously, and there would exist "no principled way of distinguishing between the end of the first burglary and the beginning of the second." United States v. Murphy, 107 F.3d 1199, 1210 (6th Cir. 1997); see also, e.g., id. (defendant's crimes were not "committed on separate occasions" where defendant burglarized a residence, and stayed behind to prevent the occupant from calling the police while his accomplices proceeded to rob a second victim in the adjoining residence); United States v. Fuller, 453 F.3d 274, 279 (5th Cir. 2006) (refusing to apply § 924(e) enhancement in situation where defendant, who served as a lookout, could have aided and abetted two robberies simultaneously).

11

which might require in-depth examination of the trial record for each predicate offense, or a similarly broad evidentiary inquiry that <u>Taylor</u> and <u>Shepard</u> have decidedly foreclosed." (footnote omitted)).

2. <u>New York's Criminal Procedure Law</u>

Even if Defendant had committed the two February 19, 2006, robberies in the same physical location, however, the Government argues that certain provisions of New York's Criminal Procedure Law compel the conclusion that these crimes were "committed on occasions different from one another." (<u>See generally</u> Gov't's Reply.)

Under section 200.20, a criminal indictment may join two offenses when they are based upon "the same act or upon the same criminal transaction," as that term is defined in section 40.10. <u>See</u> N.Y. Crim. Proc. Law § 200.20(2)(a). Section 40.10, in turn, provides that "criminal transaction" means "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture." <u>Id.</u> § 40.10(2). Joinder of two criminal offenses is mandatory, however, under section 40.40(1), which establishes that "where two or more offenses are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction . . . such person may not, <u>under circumstances prescribed in this section</u>, be separately prosecuted for such offenses even though such separate prosecutions are not otherwise barred by any other section of this article."[10] <u>Id.</u> § 40.40(1) (emphasis added).

---

[10] For example, section 40.20—known as New York's double jeopardy statute—provides that a person may otherwise be separately prosecuted for two offenses based upon the same act or criminal transaction where "[t]he offenses . . . have substantially different elements and the acts establishing one offense are . . . clearly distinguishable from those establishing the other"; or "[e]ach of the offenses . . . contains an element which is not an

The prescribed circumstances applicable in this case are set forth in section 40.40(2), which provides:

> When (a) one of two or more joinable offenses of the kind specified in [40.40(1)] is charged in an accusatory instrument, and (b) another is not charged therein, or in any other accusatory instrument filed in the same court, despite possession by the people of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and (c) either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred.

As a result, the Government argues that if the two February 19, 2006, robberies were close enough in time and space to have been part of the same criminal transaction, the mandatory joinder provision would have applied once Defendant pleaded guilty in New York County on July 24, 2006, and would have barred Defendant's subsequent prosecution in Queens County, where he pleaded guilty more than four months later. (Gov't's Reply at 3.) In other words, the Government contends that if Defendant had committed the two robberies at essentially the same time in the same location, he could not have been prosecuted separately in New York and Queens unless the two crimes constituted separate criminal transactions, in which case—the argument goes—they would have been "committed on occasions different from one another" under the ACCA. (Id. at 5 n.4.) The court disagrees; the fact that Defendant was separately prosecuted in New York and Queens counties does not mean that the two crimes were necessarily "committed on occasions different from one another" for at least two reasons.

### a. Relationship Between New York and Federal Law

The first reason is that the Government has not offered sufficient justification for the legal inference it seeks to have this court draw: that two robberies committed as a part of

---

element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil"; or "[e]ach offense involves death, injury, loss or other consequence to a different victim." N.Y. Crim. Proc. Law § 40.20(2)(a), (b), and (d).

separate criminal transactions under New York law are necessarily and inexorably "committed on occasions different from one another" within the meaning of the ACCA. Specifically, while a single "criminal transaction" can include crimes that likely would be found to have been committed on separate occasions,[11] the Government has not sought to prove a different—and equally necessary—proposition: that if two robberies constituted separate criminal transactions under New York law, they were necessarily committed on different occasions under § 924(e). Instead, if it is possible for two such crimes to have been committed on the same occasion for

---

[11] New York courts have found multiple offenses to represent a single criminal transaction in cases where, given similar facts, federal courts would likely find the crimes to have been committed on separate occasions under the ACCA. Compare, e.g., People v. Boyd, 709 N.Y.S.2d 269, 269-70 (App. Div. 2000) (one day after defendant was arrested for burglary, strip search uncovered quantity of crack cocaine; possession of controlled substance "so closely related in time, place and date" to the other charge to have been part of same criminal transaction); Meldish v. Braatz, 472 N.Y.S.2d 699, 701-02 (App. Div. 1984) (entire incident constituted single criminal transaction when co-defendants initially struck victim with fists—and attack abated and victim's associate assisted him into an adjoining barn—but the altercation eventually resumed, when defendant struck victim with shotgun and fired weapon in his direction), People v. Biltsted, 574 N.Y.S.2d 256, 259-62 (Crim. Ct. 1991) (same result, where defendants were charged with rioting over the course of a four and a half hour period of "tumult" and in directly adjacent to a single city park; and defendants were specifically accused of bottle-throwing, setting fires in two separate locations, and other property damage and "assaultive conduct"), and People v. Durant, 389 N.Y.S.2d 533, 534 (Cnty. Ct. 1976) (same result, where defendant was pulled over and ordered out of the vehicle, and a scuffle ensued between defendant and police officers, resulting in defendant being charged with failure to dim headlights, driving with revoked license, resisting arrest, second degree assault, and attempted murder), with Spears, 443 F.3d at 1360 (defendant committed separate crimes under ACCA when, after robbing two people in a parking lot and starting to return to his car, defendant robbed another person—even though at most two minutes and twenty-five to thirty feet separated the two incidents), United States v. Ressler, 54 F.3d 257, 260 (5th Cir. 1995) (same result, when after defendant broke into a house and fled on a bicycle, an observer captured defendant, who stabbed the observer with a knife in the ensuing struggle), United States v. Brady, 988 F.2d 664, 669 (6th Cir. 1993) (en banc) (same result, where defendant committed burglaries of two nearby businesses thirty to forty-five minutes apart), and Scheiman, 894 F.2d at 913 (same result, where defendant committed burglary and then assaulted pursuing officer three blocks away, only minutes later).

In some cases, however, application of the New York rule results in the same outcome that would be expected in applying the ACCA. See Murphy, 107 F.3d at 1210 ("In the instant case, there exists no principled way of distinguishing between the end of the first burglary and the beginning of the second. Murphy himself was only guilty of the second burglary as an aider and abettor. Because he never left the first location, he did not 'successfully complete' the first burglary until his accomplices completed the second."), and People v. Urena, 862 N.Y.S.2d 810, 2008 WL 2079462, at *2 (Sup. Ct. Mar. 20, 2008) (unreported disposition) ("Defendant clearly committed one continuous assault upon the complainant over a short period of time, with no pronounced break. . . . There is no way to parcel out the acts into individual acts and still satisfy the elements of the crimes charged because neither the assault nor the burglary were complete when the defendant choked the victim unconscious."); see also, e.g., People v. Mono, 602 N.Y.S.2d 266, 267 (App. Div. 1993) (two crimes did not constitute single criminal transaction where defendant burglarized a convenience store in Jefferson County and then drove into Oneida County, where he was involved in an automobile accident that resulted in his arrest on motor vehicle charges).

ACCA purposes, but nonetheless be deemed separate criminal transactions under New York law, the court would be unable to make the assumption that the Government insists it can.[12]

The Government has not cited—nor has the court's research uncovered—any New York State or federal court decision holding that two robberies[13] committed through separate criminal transactions under New York law are always committed on separate occasions under the ACCA. Of course, this absence of case law is unsurprising given the unique circumstances in this case, and the subsequently narrow question at issue. But the lack of precedent is also unremarkable where the legal analysis is particularly challenging because the two standards are not facially commensurate, and thus cannot be evaluated in comparable terms in the abstract. In other words, analyzing the relationship between New York's definition of a "single criminal transaction" and the meaning of "occasions different from one another" under the ACCA does not involve comparing "apples to apples."

Under New York's Criminal Procedure Law, two crimes constitute a single criminal transaction when they are either "(a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture." N.Y. Crim. Proc. Law § 40.10(2). By contrast, under the ACCA, two crimes are

---

[12] The court's research has uncovered at least one scenario where a federal court determined that two crimes were committed on the same occasion for ACCA purposes, but a New York court interpreting similar facts held the defendant's crimes to constitute separate criminal transactions. Compare United States v. Towne, 870 F.2d 880, 891 (2d Cir. 1989) (convictions for kidnapping and rape, where rape took place during kidnapping, were not committed on separate occasions because the two offenses "were part of a continuous course of conduct which was directed against a single victim; defendant's "method of operation was to threaten his victim with a weapon and then force her to drive to an area where he would carry out the sexual assault"), with People v. Hopkins, 464 N.Y.S.2d 247, 248 (App. Div. 1983) (although attempted murder took place during kidnapping, separate prosecution was not precluded "since the elements of the crime of attempted murder are substantially different from the crimes of rape and kidnapping and the underlying acts establishing the attempted murder are so distinguishable from those establishing the rape and kidnapping").

[13] This court limits its consideration of this question to the specific crime of robbery, defined as the forcible taking of property. The court need not—and does not—evaluate the extent to which its resolution of this issue would extend to other crimes, especially intangible ones, which would inevitably introduce further complications.

15

committed on the same occasion when they occur simultaneously, Elliott, 703 F.3d at 383, or where it is impossible to discern the point in time at which the first crime ends and the second crime begins, e.g., United States v. Murphy, 107 F.3d 1199, 1210 (6th Cir. 1997). These standards, by their very terms, address separate issues and imply different kinds of inquiries. Specifically, determining whether two crimes are a part of the same "criminal transaction" under New York law involves evaluating how "closely related" the two crimes are, and necessarily requires a court to render a fact-specific judgment on a case-by-case basis.[14] See, e.g., People v. Griffin, 524 N.Y.S.2d 298, 300 (1988) ("In order to determine whether or not two acts are part of the same criminal transaction, the court must look at the nature of the crime, as well as the underlying facts (i.e., victim, time, place and date)."). Under federal law, the question whether two crimes were committed on separate occasions is a more limited and specific inquiry: whether the defendant could have chosen to end his criminal activity before committing the second crime. Rideout, 3 F.3d at 35.

In light of these differences, the court cannot readily conclude that two robberies committed through separate "criminal transactions" are always and necessarily "committed on occasions different from one another"—at least not without proceeding to analyze every possible way in which Defendant could have committed these two robberies, a line of inquiry that seems incompatible in light of Supreme Court and Second Circuit case law. See, e.g., Dantzler, 771

---

[14] A New York Court of Appeals decision in 2007 illustrates the difficulty of elucidating a general rule based on a superficial review of the statute's plain language, at least where the standard involves a multi-factor, case-by-case analysis. Subsection (b) of the statute suggests that crimes committed as a part of the same "criminal venture" constitute a single criminal transaction. See N.Y. Crim. Proc. Law § 40.10(2). But in People v. Dallas, the court held that a defendant's sale of false identification documents in Brooklyn, and the possession in Manhattan of "additional documents of the same nature for the purpose of sale to other persons, were not so closely related as to constitute a single 'criminal transaction.'" 848 N.Y.S.2d 132, 133 (2007). In so holding, the court explained, "The fact that defendant was in the business of selling counterfeit identifications . . . did not make his possession of different documents at different times a single criminal transaction." Id. (internal citation omitted). See also People v. Vesprey, 590 N.Y.S.2d 91, 93-94 (1992) ("While the defendants in both Brooklyn and Manhattan sought illegal gain from stolen credit cards, the fact that a criminal has the same modus operandi and commits the same type of crime should not insulate him from successive prosecutions for separate and subsequent offenses.").

16

F.3d at 142-43 (emphasizing the need to avoid "subsequent evidentiary enquiries into the factual basis for the earlier conviction"). It may be that the Government's proposed inference is ultimately proved to be correct as a matter of law. The Government has not, however, provided enough for the court to draw that conclusion in this case.

*b.      Statutory Exception to Mandatory Joinder Rule*

Second, even if it were true that—at least with respect to two robberies—separate criminal transactions under New York law always constitute separate occasions under the ACCA, an important statutory exception to the mandatory joinder rule prevents the court from concluding that the two February 19, 2006, robberies were committed as a part of separate criminal transactions in the first place. Under section 40.40(2), the subsequent prosecution of an offense involving the same criminal transaction as a previously charged offense (for which trial has commenced or the defendant has pleaded guilty) is not barred if, at the time the previous offense was charged, the State did not possess "evidence legally sufficient to support a conviction of the defendant." N.Y. Crim. Proc. Law § 40.40(2). As another district court in this circuit has explained:

> [I]f the prosecution possesses "legally sufficient evidence" to support a conviction with respect to all of the "joinable" offenses, and it fails to join them in the same indictment, it may not subsequently take a defendant to trial on the uncharged joinable offenses. However, if the prosecution does not possess "legally sufficient evidence" to convict the defendant on all of the "joinable" offenses, it may commence a second prosecution of the defendant on the uncharged joinable offenses.

Carr v. Senkowski, No. 01-CV-689, 2007 WL 3124624, at *13 (W.D.N.Y. Oct. 23, 2007). Thus, for example, in People v. Rivera, the New York Court of Appeals held that notwithstanding the State's earlier prosecution of a defendant for reckless assault, the defendant's subsequent prosecution for murder of that same victim was not barred, where, at the time the state brought

17

the earlier prosecution, the victim had not died. 456 N.E.2d 492, 496-97 (N.Y. 1983); cf. People v. Tabor, 928 N.Y.S.2d 410, 412 (App. Div. 2011) ("Inasmuch as the [assault] charges were joinable and the People possessed sufficient evidence to sustain those charges at the time of commencement of the prior trial, prosecution of the [assault charge against the (other) victim] is barred by [Criminal Procedure Law] 40.40." (citation omitted)).

At his plea colloquy in Queens County, Defendant admitted that he was guilty of working as a lookout while his associates committed a robbery. (See Hr'g Tr. at 4:18-19, Dantzler, No. 1510-06 (N.Y. Crim. Ct. Dec. 7, 2006).) Thus, hypothetically, the section 40.40(2) exception could have applied in this case if: (a) Defendant's accomplices robbed two victims at essentially the same time—and thus, in a single criminal transaction, see, e.g., Griffin, 524 N.Y.S.2d at 300 (robbery of victim's jewelry, "in exactly the same place," on the same date, and "just a matter of seconds" after robbery of another victim's money and eyeglasses, constituted a single criminal transaction), and on the same occasion, see, e.g., United States v. Willoughby, 653 F.3d 738, 744-45 (8th Cir. 2011) (defendant's sale of marijuana "almost simultaneously" to undercover officer and confidential informant constituted same "occasion")—but (b) only one of the victims came forward before the first prosecution, such that the State did not have sufficient evidence to convict Defendant of the robbery of the other victim at that time. If, in this hypothetical, the second victim later came forward (after a trial or guilty plea on one robbery), a subsequent prosecution for the other robbery—although part of the same criminal transaction—would not be barred under section 40.40(2). See, e.g., Carr, 2007 WL 3124624, at *14 (citing People v. DeMarco, 562 N.Y.S.2d 863, 864 (App. Div. 1990)).

The court is in no position, however, to determine whether this exception might have applied in Defendant's case, and the Second Circuit prohibits district courts from engaging in

18

this type of speculation, which is far removed from the relevant inquiry: whether the court can conclude by a preponderance of the available evidence that the two robberies were committed on different occasions. See Dantzler, 771 F.3d at 142-43. On this record, the court cannot. Thus, as the preceding discussion illustrates, even if the court made certain assumptions about the relationship between New York's Criminal Procedure Law and the ACCA, the section 40.40(2) exception for legally insufficient evidence prevents the court from concluding that Defendant's guilty pleas in separate counties were necessarily legally valid because the two February 19, 2006, robberies were committed in separate criminal transactions.[15]

### 3.    Additional Considerations

Finally, and most importantly, the Supreme Court and Second Circuit have emphasized that the separate-occasions inquiry under the ACCA is necessarily a limited one. See Dantzler, 771 F.3d at 143 (noting "the Shepard Court was apparently concerned about the prospect of a sentencing court making any factual finding not necessarily implied by the prior conviction—irrespective of how clearly the factual finding was established"); United States v. Rosa, 507 F.3d 142, 161 (2d Cir. 2007) (finding Shepard requires that "district courts limit their consideration to particular documents that can identify the underlying facts of a prior conviction with certainty" (emphasis added)). In fact, the Second Circuit acknowledged this meant that "[a] defendant's sentence will now depend . . . on whether those States' record retention policies

---

[15] There is yet another reason why this court hesitates to conclude that Defendant's February 19, 2006, robberies were necessarily committed in separate criminal transactions. According to the transcript of Defendant's plea colloquy, the five-year sentence imposed for the robbery to which he pleaded guilty in Queens County was ordered to run concurrently with the five-year sentence imposed for the robbery to which he pleaded guilty in New York County. (See Hr'g Tr. at 5:5-15, Dantzler, No. 1510-06 (N.Y. Crim. Ct. Dec. 7, 2006).) The fact that Defendant was sentenced to concurrent terms of imprisonment for these two robberies suggests that they were committed as part of a single criminal transaction. See N.Y. Penal Law § 70.25 ("When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently."). Defendant himself suggests, however, that concurrent sentences were imposed pursuant to a multi-county plea arrangement. (See Def.'s Sur-Reply at 1.) In any event, this ambiguity exemplifies the complications characteristic of this particular evidentiary record.

19

happen to preserve the musty written plea agreements and recordings of 'plea colloquies' ancillary to long-past convictions."[16] Id. at 145-46 (quoting Shepard, 544 U.S. at 36-37 (O'Connor, J., dissenting)); see also Shepard, 544 U.S. at 22 (majority opinion) (acknowledging the Government's argument that "[a] bar on review of documents like police reports and complaint applications would often make the ACCA sentencing enhancement hinge on the happenstance of state court record-keeping practices and the vagaries of state prosecutors' charging practices"); Dantzler, 771 F.3d at 143-44 (noting "the facts relied upon in determining whether offenses are committed on 'different occasions'—the date, time, victim identity, or location of the offense—are rarely elements required for conviction, and hence, might not be included in jury instructions or placed before the court (much less admitted by a defendant) during a plea colloquy").

To be clear, the Government is not required to prove to a "metaphysical certainty" that the crimes were committed on separate occasions, see James v. United States, 550 U.S. 192, 207 (2007), and the court is not required "either to wear blinders or to leave common sense out of the equation," United States v. Miller, 478 F.3d 48, 52 (1st Cir. 2007), or "to abandon logic and embrace the absurd in conducting an ACCA analysis," United States v. Foster, 662 F.3d 291, 295 (4th Cir. 2011). See also United States v. Thomas, 572 F.3d 945, 951 (D.C. Cir. 2009) (rejecting Defendant's suggestion that "notwithstanding the specific separate dates recited in the indictments," which were five months apart, it was "possible" that the offenses in fact occurred on the same date). There is a difference, however, between the requirement that each underlying fact be established "with certainty," and the determination of whether the

---

[16] For example, in this case, the Government informed the court that according to the court reporters' office at the Supreme Court, New York County, "[a] concerted effort was made to locate the stenographic notes [of the defendant's July 24, 2006 guilty plea]. Unfortunately, [the Court Reporters' Office] ha[s] been unsuccessful in finding these notes, and [they] are unable to provide the requested minutes [of the plea hearing]." (Gov't's Reply at 2 n.1 (alterations in original).)

Government has met its ultimate burden of persuasion by a preponderance of all of the facts in the record. As the Government conceded in its papers (see Gov't's Reply at 1)—and at oral argument—there is no evidence with respect to time or physical location of either February 19, 2006 robbery, other than the "fact" that Defendant pleaded guilty to one robbery in New York County and the other robbery in Queens County. As the court explained above, given the unique relationship between New York and Queens counties, as well as the provisos of New York's Criminal Procedure Law, the Government has not established facts regarding any of the important Rideout factors, let alone sufficient facts to constitute a preponderance of the evidence.

When the facts in the record are ambiguous as to whether two offenses were committed on separate occasions, courts properly decline to impose the enhanced penalty on the basis of judicial guesswork. See, e.g., United States v. Fuller, 453 F.3d 274, 279 (5th Cir. 2006) (refusing to apply § 924(e) enhancement in situation where defendant, who served as a lookout, could have aided and abetted two robberies simultaneously); see also Kirkland v. United States, 687 F.3d 878, 889 (7th Cir. 2012) ("[W]henever we have had doubts as to whether the record indicated that the offenses occurred on separate occasions, we have declined to use the offense as a predicate conviction for the ACCA enhancement.");[17] United States v. Graves, 60 F.3d 1183, 1187 (6th Cir. 1995) ("Congress intended the statute to punish recidivism, to punish career criminals who had committed three felonies on separate occasions. It should not be necessary to reach to apply this statute; instead, the statute should be applied where the facts demand its application."); Towne, 870 F.2d at 891 (noting § 924(e) "was intended to target

---

[17] In Kirkland, the defendant had been separately indicted for a burglary and robbery that happened in the same county, on the same day. 687 F.3d at 881, 887. Because the defendant was charged with co-defendants for both offenses, and the record lacked "key information such as the timing and location of the offenses," the Seventh Circuit was unable to determine if the offenses occurred simultaneously or sequentially. Id. at 888; see also id. (noting the Government had conceded that the defendant could have committed one offense while his co-defendants committed the other offense).

recidivists, i.e., those who have engaged in violent criminal activity on at least three separate

occasions, and not individuals who happen to acquire three convictions as a result of a single

criminal episode"). While the court might reasonably surmise that the likelihood that

Defendant's two February 19, 2006, robberies were "committed on the same occasion" is

particularly low, it is precisely this type of speculation as to the underlying facts that has been

foreclosed by the Supreme Court and the Second Circuit.[18] See Dantzler, 771 F.3d at 142-44.

## III. CONCLUSION

In this case, the Government is effectively asking the court to draw conclusions regarding

the facts underlying Defendant's prior convictions on the basis of the circumstances of those

convictions. For the reasons set forth above, the court declines to sanction this endeavor. See

United States v. Murphy, 107 F.3d 1199, 1210 (6th Cir. 1997) ("[T]o adopt the government's

reasoning would be to abandon our central understanding of the statute—that it is the nature of

the criminal episodes themselves, not the status or timing of the convictions, that controls

whether the events are separable."). Accordingly, because Taylor- and Shepard-approved

documents do not indicate—at least by a preponderance of the evidence—that the two

February 19, 2006, robberies were "committed on occasions different from one another" within

---

[18] The Government argues that its analysis of New York's Criminal Procedure Law is not the type of evidentiary inquiry prohibited under the case law. (See Gov't's June 10, 2015, Ltr. at 2 n.2.) Instead, the Government argues—with some force—that this sort of statutory interpretation is directly analogous to the legal analysis explicitly sanctioned by the Supreme Court when it utilized, for example, the "modified categorical approach" to determine whether a defendant's prior conviction constituted a "violent felony" under the ACCA. See, e.g., Descamps v. United States, 133 S. Ct. 2276, 2285-86 (2013) (analyzing California burglary statute to determine whether conviction necessarily required the defendant to admit to unlawful entry as an element of the offense); Johnson v. United States, 559 U.S. 133, 136-38 (2010) (analyzing defendant's battery conviction under Florida law to determine whether it necessarily required the use of "physical force"); see also Taylor, 495 U.S. at 599-600 (directing sentencing courts to determine whether state burglary statutes "correspond[] in substance to the generic meaning of burglary"); Rosa, 507 F.3d at 159-61 (discussing whether New York criminal law permitted Government's inference that by pleading guilty to first degree robbery, defendant necessarily admitted to having used a firearm for purposes of 18 U.S.C. § 924(e)(2)(B)). However, as the foregoing discussion illustrates, when the analysis involves hypothesizing scenarios pursuant to which Defendant's two robberies might or might not be found to have been "committed on occasions different from one another," the court is inevitably seeking to reconstruct the facts underlying a prior conviction. This is not the enterprise contemplated—much less employed—by the Supreme Court in Shepard or the Second Circuit in Dantzler.

22

the meaning of § 924(e), the court will not apply the ACCA's sentencing enhancement. Without the ACCA enhancement, Defendant's total adjusted offense level is 23. (See Def.'s Resp. at 6.) Because Defendant is in criminal history category VI, his sentence range under the Guidelines is 92 to 115 months of imprisonment (U.S. Sentencing Guidelines Manual § 5A (Sentencing Table)), which is less than the statutory maximum of 10 years, or 120 months' imprisonment otherwise applicable to Defendant's crime of conviction.[19] See 18 U.S.C. § 924(a)(2).

s/NGG

Dated: Brooklyn, New York
     July 22, 2015

NICHOLAS G. GARAUFIS
United States District Judge

---

[19] The court will determine the actual sentence it imposes at Defendant's sentencing hearing, after the court evaluates the appropriate factors to be considered under 18 U.S.C. § 3553(a).